[Crim. No. 6279. First Dist., Div. Three. Jan. 30, 1968.]

THE PEOPLE, Plaintiff and Respondent, v. RICHARD LEE PELL, Defendant and Appellant.

Herbert S. Matthews, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Jerome C. Utz, Charles R. B. Kirk and Robert R. Granucci, Deputy Attorneys General, for Plaintiff and Respondent.

BROWN (H. C.), J.—Defendant was tried before a jury and convicted of the armed robbery of a service station. (Violation of Pen. Code, § 211.) Defendant was also charged with and admitted three prior felonies.* In each prior felony conviction, defendant was represented by counsel.

Defendant contends on appeal that the trial court erred in admitting testimony identifying him as the person who committed another crime, i.e., a holdup in Sacramento on November 28, 1965, for which offense he had not been charged.

The only evidence produced at the trial was presented by the prosecution's witness. This evidence disclosed that on November 22, 1965, at 2 or 2:30 a.m., while Raymond Douglas was working as an attendant in a San Pablo gas station, the defendant drove into the station in a green Ford pickup truck and requested directions to the San Rafael bridge. Five or ten minutes after leaving the station the defendant returned in the same pickup truck and compelled Douglas at gun point to deliver to him the contents of the cash register. Douglas observed the Ford pickup truck had the words "Davy's Tree Surgery" painted on the side. As defendant was driving away from the station Douglas also obtained the license number of the truck.

---

*Defendant's prior convictions consisted of (1) an auto theft in Nebraska in 1955, a felony; (2) a violation of section 503 of the California Motor Vehicle Code in 1959 (unlawful taking of automobile, a felony); and (3) larceny in 1963, a felony, in the State of Oregon. As defendant did not testify, the prior felony convictions were not introduced into evidence. (See Evid. Code, § 787.)

A short time after the San Pablo Police Department had been notified of the robbery, Police Officer Noland Andress discovered the Davy's Tree Surgery truck which had been abandoned five or six blocks from the service station. The hood covering the engine was found to be warm, indicating it had been recently driven. On the floor of the front seat was a $5.00 bill.

James Owens testified that he was defendant's cousin and was employed by Davy's Tree Surgery. At the time of the robbery he lived in the house adjoining the residence of defendant. The truck "involved" was owned by his employer the Davy's Tree Surgery Company, and when not in use was parked in a parking lot; that it was a common occurrence for a spare set of ignition keys to be left under the floor mat of the truck.

The prosecution also produced a witness, one Forrest Beeman, who stated that on November 28, 1965, he had been robbed at gun point at his place of employment at the East Lawn Cemetery in Sacramento. He identified the defendant as the robber.

The evidence of the Sacramento robbery, which defendant claims as error, was admitted in evidence on the basis of a striking similarity in the *modus operandi* and to show the presence of a plan or common design in the commission of the two robberies. It is true that there were some similarities between the Sacramento robbery and the San Pablo robbery. ■ The Sacramento robbery was committed by a man acting alone, using a small caliber revolver, threatening the victim with harm, and making the getaway in a stolen car which was later found to have been abandoned close to the scene of the robbery. But these and other specified similarities do not establish any particular pattern identifying each crime with this defendant. ■ The claimed similarities may be said to be similar to most robberies, i.e., the use of a lethal weapon, the threats to induce surrender of the money, and the abandonment of the getaway car. Defendant's counsel also directs attention to significant dissimilarities. The two robberies were committed in cities distant from each other. One robbery was committed at a service station; the other at the office used for conducting a cemetery. The Sacramento cemetery office was robbed during the day and the San Pablo service station was robbed in the darkness of the early hours of the morning. In the Sacramento robbery the robber wore a stocking cap. At San Pablo he was bareheaded.

Evidence of other crimes is *inadmissible* if it tends to prove only criminal disposition or propensity on the part of the accused to commit the crime charged. The evidence is excluded because its probative value is outweighed by its prejudicial effect. (See *People* v. *Stanley,* 67 Cal.2d 812, 816, 817 [63 Cal.Rptr. 825, 433 P.2d 913].) The court in *People* v. *Sykes,* 44 Cal.2d 166, 174-175 [280 P.2d 769] said: " 'The common law has not grown in the tradition of convicting a man and sending him to prison because he is generally a bad man . . . General bad character . . . has not yet become a criminal offense in our scheme. Our whole tradition is that a man can be punished by criminal sanctions only for specific acts defined beforehand to be criminal, not for general misconduct. . . .' "

Evidence of other crimes is *admissible* when it tends logically and by reasonable inference to prove any fact material for the prosecution or to overcome any fact sought to be proved by the defense. (See *People* v. *Peete,* 28 Cal.2d 306, 315 [169 P.2d 924] ; *People* v. *McMonigle,* 29 Cal.2d 730, 742-743 [177 P.2d 745].) It is also admissible where it tends to show presence of a common design, plan or *modus operandi* or consciousness of guilt. (See *People* v. *Albertson,* 23 Cal.2d 550, 552 [145 P.2d 7] ; *People* v. *Pike,* 58 Cal.2d 70, 89 [22 Cal.Rptr. 664, 372 P.2d 656] ; *People* v. *Wade,* 53 Cal.2d 322, 330 [1 Cal.Rptr. 683, 348 P.2d 116] ; *People* v. *Riser,* 47 Cal. 2d 566, 578 [305 P.2d 1].)

The admission of the testimony of the Sacramento robbery was not justified as an exception to the general rule excluding such evidence. The evidence does not disclose a *modus operandi,* a peculiar or characteristic behavior pattern, or a scheme or plan sufficiently similar to warrant the inference that because the defendant committed the other act he also committed the act charged. (See *People* v. *Cramer,* 67 Cal.2d 126, 129-130 [60 Cal.Rptr. 230, 429 P.2d 582], citing cases; *People* v. *Peete, supra.*)

The admission into evidence of another crime for which the defendant had not been charged is objectionable because of its prejudicial effect on jurors in resolving conflicts in the evidence or weighing the probative value of circumstantial evidence. But here there was no conflict in the evidence other than a conflict with the presumption of innocence. (Pen. Code, § 1096.) Defendant produced no evidence on his own behalf. He rested at the conclusion of the prosecu-

tion's case. Also, the evidence here was not solely circumstantial. The identification of the defendant as the robber was clear and uncontradicted. The victim had the opportunity of observing the defendant on two occasions the night of the robbery. This positive testimony that defendant was the robber was supported by the inference that he had access to the pickup truck used in the robbery.

It is recognized that the jurors are the sole and exclusive judges of the effect and value of evidence addressed to them and of the credibility of the witnesses in the case.

However, it is unreasonable to believe that the jury in the instant case would have relied upon the presumption of innocence alone in reaching a result more favorable to defendant absent the error.

It is well established that harmless error occurring during the trial will not justify a reversal by an appellate court. At common law an error committed in the trial of a case was not sufficient ground for setting aside the verdict and ordering a new trial unless upon all the evidence it appeared to the judges that the truth had thereby not been reached. (See *Harmless Constitutional Error,* 20 Stan.L.Rev. 83; 1 Wigmore, Evidence (3d ed. 1940) § 17, p. 315.) To justify reversal the error must have resulted in a miscarriage of justice, and it must be reasonably probable that a result more favorable to the appealing party would have been reached in the absence of error. (See Cal. Const., art. VI, § 4½; *People* v. *Watson,* 46 Cal.2d 818, 835 [299 P.2d 243] ; *People* v. *Eddington,* 201 Cal.App.2d 574 [20 Cal.Rptr. 122] ; *People* v. *Combes,* 56 Cal.2d 135 [14 Cal.Rptr. 4, 363 P.2d 4] ; *People* v. *Ross,* 67 Cal.2d 64, 83 [60 Cal.Rptr. 254, 429 P.2d 606] ; 20 Stan.L.Rev. 83, *supra;* 1 Wigmore, Evidence, *supra.*)

Generally, error in the admission of evidence that a defendant committed another crime would not fall within the harmless error rule relating to technical error or errors occurring in the formalities or minutiate of procedure of a trial. (See *People* v. *Ross, supra,* 67 Cal.2d 64, 83.) Where there is conflicting evidence or where a conviction is the result of reliance upon circumstantial evidence, the admission of testimony concerning another crime could be prejudicial error.

But here the admission in evidence of the Sacramento robbery was such a defect that it had little, if any, likelihood of having changed the result of the trial. (See *People* v. *Ross, supra; People* v. *Modesto,* 66 Cal.2d 695, 714 [59

Cal.Rptr. 124, 427 P.2d 788].) In considering the entire record there is no reasonable probability that this jury could have reached any verdict other than guilty if the erroneous evidence had not been admitted.

The judgment is affirmed.

Draper, P. J., and Salsman, J., concurred.

A petition for a rehearing was denied February 29, 1968, and appellant's petition for a hearing by the Supreme Court was denied March 28, 1968. Mosk, J., and Burke, J., were of the opinion that the petition should be granted.