[Crim. No. 17900. Second Dist., Div. Five. Oct. 19, 1970.]

THE PEOPLE, Plaintiff and Respondent, v.
NORMAN EDWARDS, Defendant and Appellant.

88

COUNSEL

Joe Reichmann, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and James H. Kline, Deputy Attorney General, for Plaintiff and Respondent.

OPINION

KAUS, P. J.—An 11-count information accused defendant of various violations of sections 261, 288 and 288a of the Penal Code. After the prosecution moved to dismiss three counts and certain counts of the information were renumbered, the case went to trial before a jury on the following charges:

| COUNT | VIOLATION | VICTIM | DATE |
| --- | --- | --- | --- |
| I | 288 | Joseph Ralph S. | Feb. 23, 1968 |
| II | 288a | Joseph Ralph S. | Feb. 23, 1968 |
| III | 288 | Joseph Ralph S. | March 26, 1967 |
| IV | 288a | Joseph Ralph S. | March 26, 1967 |
| V | 288 | James Robert S. | April 7-23, 1968 |
| VI | 288a | James Robert S. | April 7-23, 1968 |
| VII | 288 | Janet Rae S. | March 22-April 1, 1968 |
| VIII | 288 | Janet Rae S. | April 7-23, 1968 |

Counts IV and VI alleged that the victims were under the age of 14 years and that defendant was more than 10 years older than they.

After a jury trial which consumed all or part of 8 days defendant was acquitted on counts I and II and found guilty on count III through VIII. The 10-year age difference alleged in counts IV and VI was found to be true. After abortive mentally disordered sex offender proceedings and a commitment for observation under section 1203.03 of the Penal Code, probation was eventually denied and defendant was sentenced to concurrent prison terms on counts III, V, VII and VIII. Sentences on counts IV and VI were ordered to run concurrently with each other, but a stay of execution was granted as to those counts. (*People* v. *Niles,* 227 Cal.App.2d 749, 754-756 [39 Cal.Rptr. 11].)

## FACTS

No contention with respect to the sufficiency of the evidence is made. Therefore no useful purpose would be served by detailing it. The victims were defendant's stepchildren, Joseph Ralph, born June 7, 1954, James Robert, age 10 and Janet Rae age 8. Defendant and their mother had been married since 1964.

In support of the allegations of the information, the boy victims testified to acts of oral intercourse between themselves and defendant. Janet testified that during the time alleged in count VII defendant placed his penis between her legs on several occasions and that during the time alleged in count VIII he inserted his penis into her vagina and placed his tongue between her legs. Defendant's penis was very big and went all the way in. Janet described the size of defendant's penis with the aid of various objects presented to her for comparison.

Without objection the prosecution introduced evidence of acts of mutual oral copulation between defendant and Joseph before the family moved to California from Massachusetts in 1965. Joseph also testified concerning an attempt at anal intercourse made by defendant in Massachusetts and a similar happening in California, early in 1967. According to Joseph, oral copulation with defendant occurred about once a month after the family's arrival in California. Further there were acts of triple oral copulation between defendant, Joseph, and James after the family had moved from El Monte to Montebello in October 1967.

James corroborated Joseph with respect to acts of triple oral copulation. He too testified to acts of oral intercourse between himself and defendant on occasions other than those charged in the information. On one occasion defendant forced James to put his penis between Janet's legs. This was corroborated, in part, by Janet who testified that defendant made "Jimmy put his thing into" her.

Defendant testified in his own behalf and denied all sexual misconduct with his stepchildren. The defense also called a gynecologist who had examined Janet on June 8, 1968, and whose report was as follows: "The vulva and external genital area appears healthy. There are no bruises, no cuts, lacerations. The hymen was intact. All the tissues were healthy. The secretions were clear." In his opinion a penis of the size described by Janet, could not have entered the vaginal area without lacerating the hymen.

## CONTENTIONS

Through his appointed counsel defendant contends: 1. that the evidence concerning sex crimes other than those charged in the information was in-

admissible under the rule of *People* v. *Stanley,* 67 Cal.2d 812, 819-821 [63 Cal.Rptr. 825, 433 P.2d 913]; 2. that he was denied the effective assistance of counsel; 3. that in view of his convictions on counts IV and VI (Pen. Code, § 288a) he should not have been convicted on counts III and V (Pen. Code, § 288).

## DISCUSSION

■ The Attorney General argues that much of the evidence of uncharged sex acts was not uncorroborated. He points to the fact that James and Joseph corroborated each other as to the acts of triple oral copulation and that James and Janet corroborated each other with respect to the episode when defendant forced James to put his penis between Janet's legs. It is also claimed that Joseph and James corroborated each other with respect to uncharged acts of oral intercourse, not committed in each other's presence, because they testified to the same type of act.

It is unnecessary to decide the merits of the attempted distinction between this case and *Stanley.* There was no error in the admission of the evidence, since defendant never objected to any of it. The case was tried over a year after the *Stanley* decision was filed.

■ Realizing that the lack of an objection to the evidence under attack may be fatal to defendant's first contention, counsel falls back on what has become the Morton's Fork of criminal appellate advocacy: he claims that trial counsel's failure to object brings the case under the umbrella of the rule of *People* v. *Ibarra,* 60 Cal.2d 460, 464-466 [34 Cal.Rptr. 863, 386 P.2d 487].

We disagree. Counsel's failure to object may very well have been extremely sound strategy. (*People* v. *Reeves,* 64 Cal.2d 766, 772-774 [51 Cal.Rptr. 691, 415 P.2d 35].)

The defense was faced with the fact that it was unable to prevent the prosecution from offering, in support of the multi-count information, evidence of numerous illegal sex acts on the part of defendant. Obviously, therefore, the prejudicial effect of testimony concerning additional offenses was relatively small. On the other hand there was much potential gain in permitting the evidence to come in. Every trial lawyer knows that the more an adverse witness talks on direct examination, the greater is the possibility that cross-examination may successfully demonstrate his lack of credibility. Defense counsel could assume that the children, if mendacious, knew their script with respect to the charged crimes. The chances that he would be able to catch them in a lie in connection with the crimes not charged may reasonably have appeared much brighter. Ineffective representation by counsel is not shown.

■ Defendant claims that under the doctrine of *People* v. *Greer*, 30 Cal.2d 589, 602-604 [184 P.2d 512], it was improper to convict him on counts III and V (Pen. Code, § 288) as well as on counts IV and VI (Pen. Code, § 288a).

*Greer* held that the offense of statutory rape (Pen. Code, § 261, subd. 1) had become "included within section 288 by that section's own terms" when the 1937 Legislature added the italicized words to the latter section to make it read as follows: "Any person who shall willfully and lewdly commit any lewd or lascivious act *including any of the acts constituting other crimes provided for in part one of this code* upon or with the body, or any part or member thereof, of a child under the age of fourteen years, with the intent of arousing, appealing to, or gratifying the lust or passions or sexual desires of such person or of such child, shall be guilty of a felony and shall be imprisoned in the State prison for a term of from one year to life." Therefore a defendant could not be convicted of both offenses where they were part of the same act. Shortly after *Greer*, its holding was explained in *People* v. *Slobodion*, 31 Cal.2d 555, 561-563 [191 P.2d 1]. In that case the defendant, apparently in rapid succession, put the young victim on a bed, placed his private parts into her's, put his mouth to her private parts, sat her on a table and repeated the two acts. The court held that, although the acts were all committed within a relatively short time, the violations of section 288a were separate offenses for which the defendant was properly, separately convicted.

In the case at bar Joseph testified that: "He put his penis in my mouth and I did it to him." James said: "He made me put my thing into his mouth and he made me put his thing into my mouth." There was no error.

■ By permission of the court defendant filed a supplemental brief prepared, presumably, by himself. In addition to matters covered in his appointed counsel's brief, he claims that the prosecution did not prove the date when the offenses on Janet were committed.

Janet testified that the offense charged in Count VII was committed while her mother was at a PTA conference and that the offense charged in Count VIII was committed "more than once" while her mother was in the hospital. Defendant's wife testified that the PTA conference took place during a "period of a week or two weeks," during the latter part of March 1968 and that she had been hospitalized from April 7 to April 23, 1968. This adequately established the time of the offenses.

Defendant further argues that Janet's testimony is not reconcilable with the findings of the gynecologist. The jury apparently felt the same way as did the trial court which said during one of the lengthy post-trial proceedings: ". . . [I]t appears to this court to have been entirely consistent and rational for the jury to reach the conclusion that the defendant had not inserted his

penis in the child but had either placed it up against her vagina or had placed it between her legs but not inside of her. 288 does not require intercourse."

The judgment is affirmed.

Stephens, J., and Aiso, J., concurred.

A petition for a rehearing was denied November 4, 1970, and the opinion was modified to read as printed above. Appellant's petition for a hearing by the Supreme Court was denied December 17, 1970.